995 F.2d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Efrain L. MELENDEZ, Defendant-Appellant.
 No. 92-3437.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1993.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Efrain Melendez appeals his conviction and sentence on a drug conspiracy charge. For all of the following reasons, we AFFIRM.
 
 I.
 
 2
 This case involved a conspiracy to distribute drugs in Columbus, Ohio. Kendrick Gil and his associates transported cocaine from New York to Ohio. Defendant introduced Gil to Gino Bracaloni, who maintained an extensive drug distribution network in Columbus, Ohio. With defendant's and Gil's assistance, Bracaloni received a steady supply of cocaine for sale on the streets of Columbus.
 
 
 3
 Defendant was named in one count of a fifteen count indictment. He was charged with conspiracy to distribute, and to possess with intent to distribute, five or more kilograms of cocaine from the Fall of 1989 to November 29, 1990, in violation of 21 U.S.C. § 846. Sixteen other codefendants were similarly charged. A jury returned a guilty verdict, and defendant was sentenced to 151 months imprisonment.
 
 II.
 A.
 
 4
 Defendant first argues that the district court erred in admitting evidence of an October 1989 State Highway Patrol traffic stop of two codefendants travelling from Toledo to Columbus. The rental vehicle was stopped in October 1989 by Trooper Brenda Smith on U.S. Route 23, which links Toledo and Columbus. A search of the vehicle uncovered approximately $17,000 and approximately one half kilogram of cocaine in the trunk. Four individuals were in the car. According to Trooper Smith, one of the individuals identified herself as Mercedes Rodriguez and one of the males identified himself as Richard Gil.
 
 
 5
 Defendant argues that this evidence lacked probative value because the government did not show (1) that the two individuals truthfully identified themselves, (2) that anyone in the car owned the seized money and/or the drugs, and (3) that Kendrick Gil, defendant's cohort and the leader of the drug ring, was implicated in supplying the seized money and/or drugs. Defendant also contends that the evidence constituted inadmissible hearsay and proof of prior crimes or bad acts. The government responds by arguing that the evidence was admissible to establish the existence of the conspiracy (by virtue of the presence of two co-conspirators in the automobile) and as evidence of actions of co-conspirators prior to defendant's participation in the conspiracy. Relevancy determinations are reviewed under an abuse of discretion standard. United States v. Hawkins, 969 F.2d 169, 174 (6th Cir.1992); United States v. Cusmano, 728 F.2d 380 (6th Cir.1984).
 
 
 6
 With respect to the admission of Trooper Smith's testimony, defendant did not object at trial on the grounds that the testimony was hearsay or that the government failed to connect evidence of the highway stop and search with the conspiracy charged. Accordingly, we review for plain error. See American Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417, 424 (6th Cir.1984) (noting that unless a substantial right of a party is affected, Fed.R.Evid. 103 forecloses reliance on the improper admission of evidence as a basis of appeal where timely objections with specific grounds are not made at trial).
 
 
 7
 There was evidence that the October 1989 incident was part of the conspiracy charged in the indictment. Trooper Smith testified that two occupants identified themselves as individuals who were known conspirators. Contrary to defendant's suggestion, there was no need to corroborate their identities and the witness was subject to cross-examination on the issue. Because actions of conspirators prior to a co-conspirator's involvement are admissible, United States v. Sepulveda, 710 F.2d 188, 189 (5th Cir.1983) (citing United States v. United States Gypsum Co., 333 U.S. 364 (1948)), we find no error.
 
 
 8
 Moreover, even if the incident was not probative of the conspiracy's formation, and assuming Trooper Smith's testimony was bad acts evidence, evidence of prior acts on the part of conspirators that predate the conspiracy is admissible to show the background and development of the conspiracy, the relationship between the conspirators, and the significance of later acts. United States v. Diaz, 878 F.2d 608 (2d Cir.1989); United States v. Moten, 564 F.2d 620 (2d Cir.1977); United States v. Torres, 519 F.2d 723 (2d Cir.1975); United States v. Crockett, 514 F.2d 64 (5th Cir.1975). In this case, the incident could arguably have shown the co-conspirators' familiarity with cocaine, their prior relationship, and the formation of the conspiracy itself. Although evidence of the stop, alone, does not establish guilt, it was one permissible link in the chain of proofs offered by the government.
 
 B.
 
 9
 Defendant next argues that the district court erred by admitting evidence of actions taken by co-conspirators after defendant withdrew from the conspiracy. Defendant claims that the evidence tended to show guilt by association. In a related argument, defendant contends that the district court erred by failing to give a jury instruction on the issue of withdrawal. The government argues in response that the evidence admitted was clearly related to the conspiracy and that the actions occurred before defendant withdrew.
 
 
 10
 The testimony regarding withdrawal was provided largely by Christine Aller, defendant's girlfriend for a short time and a co-conspirator. She testified that defendant told her he was relocating to Florida to enter flying school, and he in fact did so on June 26, 1990. Aller also testified that defendant said he was going to Florida only temporarily. That intention changed after Bracaloni was arrested: defendant then told Aller that he was not going back.
 
 
 11
 Two others also testified as to defendant's relocation. Defendant told co-conspirator Nikias Chalkias that he was leaving the area out of concern that things were "getting hot." In addition, defendant told co-conspirator Thomas Fay that he was sure that the conspiracy was soon to be exposed, so he wished to go to Florida and take flying lessons.
 
 
 12
 Once the defendant's membership in the conspiracy is established, it is presumed to continue until the defendant withdraws from the conspiracy by affirmative action. United States v. Edgecomb, 910 F.2d 1309, 1311-12 (6th Cir.1990); United States v. Mayes, 512 F.2d 637, 642-43 (6th Cir.), cert. denied 422 U.S. 1008 (1975). Defendant bears the burden of proving withdrawal. United States v. Hamilton, 689 F.2d 1262, 1269 (6th Cir.1982). To meet this burden, defendant must show definite and decisive steps to disassociate fully and completely from the conspiracy. United States v. Battista, 646 F.2d 237, 246 (6th Cir.), cert. denied 454 U.S. 1046 (1981) ("[w]e have held that withdrawal requires proof of affirmative action to disavow or defeat the purposes of the conspiracy"). Mere cessation of activity is not enough. Lash, 937 F.2d at 1083 (citing Hyde v. United States, 225 U.S. 347 (1912)).
 
 
 13
 The evidence shows that defendant's decision to leave Columbus was motivated by his desire to take flying lessons and, more significantly, his belief that the conspirators were in danger of being arrested. Defendant's words and deeds do not evidence an attempt to disavow the conspiracy or to defeat its purpose, especially in light of his statement to Aller that he intended originally to return to the Columbus area and in light of his unmet demand that he receive a gold Porsche and $10,000 in return for his participation in the criminal enterprise. Accordingly, we conclude that there was no evidence of withdrawal and, therefore, that evidence of activities after defendant's travels to Florida was not improperly admitted. As such, the district court was not obligated to instruct the jury on withdrawal.
 
 C.
 
 14
 Defendant next claims that the district court made improper comments to the jury regarding a plea agreement entered into between the government and the government's main witness at trial, Gino Bracaloni. In addition, defendant argues that the district judge's remarks both bolstered the credibility of the witness and defeated the defendant's attempt to show the existence of a separate conspiracy.
 
 
 15
 On cross-examination, defense counsel asked Bracaloni about his sentence entered pursuant to a Rule 11 plea agreement. Specifically, counsel inquired into a $40,000 fine assessed against him. At Bracaloni's sentencing, the district judge indicated that the $40,000 fine would be collected by forfeiture of a Florida condominium in defendant's mother's name that was purchased with $40,000 of Bracaloni's drug money, or by simply levying against Bracaloni's other assets. It was defendant's theory that the government agreed to waive collection of the $40,000 fine in exchange for Bracaloni's testimony against defendant. Defense counsel argued that questions regarding the plea agreement were relevant to Bracaloni's motivation for testifying and ultimately shed light on his credibility.
 
 
 16
 The district judge remarked to the jury that evidence at Bracaloni's sentencing indicated that "there was a condominium in Florida in ... [Bracaloni's mother's] name, and that $40,000 of drug proceeds had been used to purchase that property...." The judge also stated that "there was nothing in the plea agreement that said it [the money] could be kept." The judge concluded by noting that "there was no agreement between him [Bracaloni] and the government that restricted the court from ... [collecting the fine]."
 
 
 17
 In a complex trial, intervention by the judge is often needed to clarify the proceedings. If the facts become muddled and neither side succeeds at clarifying them, the judge performs an important duty by interposing clarifying comments or questions. United States v. Hickman, 592 F.2d 931, 933 (6th Cir.1979). Furthermore, we have stated that
 
 
 18
 [t]he trial judge in the federal court is more than a mere arbitrator to rule upon objections and to instruct the jury. It is his function to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties. It is his duty to see that the issues are not obscured and that the testimony is not misunderstood.
 
 
 19
 Id. (citing various cases).
 
 
 20
 The district court forbade defense counsel from suggesting that there was a secret agreement between Bracaloni and the government. The exclusion was warranted in light of the fact that there was no evidence at all to support such a theory. The matter was thus irrelevant and inflammatory. Moreover, under Hickman, the judges comments were constructive and did not prejudice defendant's ability to present his defense. The judge's comments merely reflected the substance of the matters contained in the admissible plea agreement. See United States v. Townsend, 796 F.2d 158, 163 (6th Cir.1986) (holding testimony pursuant to a plea agreement and the plea agreement itself are admissible). Defendant's contentions notwithstanding, the district judge's remarks do not even approach the frequency, type, and tone of involvement that we have characterized as unacceptable. See, e.g., Hickman, 592 F.2d 931 (district judge interrupted examination over 250 times, demonstrated anti-defendant tone, and took over cross-examination of defense witnesses). We find no error here.
 
 D.
 
 21
 Defendant argues that he was deprived of his Sixth Amendment right to confront and to cross-examine witness Marlo Willis. Willis set-up a video camera at Bracaloni's 1990 birthday party. During the party, Willis pulled defendant in front of the camera and kissed him on the cheek. Defendant turned away from the camera and said "this is how they will get us." Defendant also claims that the admission of the statement violated his right against self-incrimination.
 
 
 22
 The government examined Willis only to establish the foundation for the admission of defendant's incriminating statement, and Willis indicated that he would invoke his right against self-incrimination if asked any questions relating to drug involvement. The court, therefore, limited cross-examination to foundational matters.
 
 
 23
 Defendant claims that he should have been able to probe Willis' understanding of defendant's statement in an effort to put the statement in its proper context. Noting that the district court has broad discretion to limit cross-examination, United States v. Atisha, 804 F.2d 920 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987), and that defendant's line of questioning would have exceeded the scope of direct examination, we conclude that cross examination was properly limited. We note, too, that the statement was an admission of guilt and was therefore admissible into evidence under Fed.R.Evid. 801(d)(2) (admission by party opponent). Accordingly, we conclude that defendant's claim lacks merit.
 
 E.
 
 24
 Defendant argues that the district court miscalculated the quantity of drugs involved in the crime and as a result miscalculated defendant's sentence under the Sentencing Guidelines. Findings of fact regarding the amount of controlled substances on which the offense level is based may not be set aside unless clearly erroneous. United States v. Walton, 908 F.2d 1289 (6th Cir.), cert. denied, 111 S.Ct. 273 (1990).
 
 
 25
 The district court concluded that defendant distributed between 20 and 30 kilograms of cocaine. This conclusion was based on Bracaloni's testimony that he purchased between one to four kilograms of cocaine "every couple of weeks" over a period of 17 weeks, and that "a couple of weeks" meant "every 2 or 3 weeks." Simple multiplication shows that the range of drugs purchased was approximately 6 to 32 kilograms. The district court's finding falls squarely within this range and, as a result, is not clearly erroneous.
 
 F.
 
 26
 Defendant claims that the district court erred by refusing to make a downward departure based on defendant's lack of youthful guidance. At the sentencing hearing, the district judge stated that even if lack of youthful guidance was an appropriate basis for a downward departure, defendant had at least an average upbringing and, in many respects, was privileged. Thus, he concluded that defendant was not entitled to a downward departure. Because we lack jurisdiction over challenges to the district court's refusal to make a downward departure, we do not address the merits of this claim.
 
 III.
 
 27
 For all of the reasons stated, defendant-Melendez's conviction and sentence are AFFIRMED.