UNITED STATES of America, Plaintiff–Appellee,

v.

Shawn Darrick ROBBS, Defendant–Appellant.

No. 01–2043.

United States Court of Appeals, Sixth Circuit.

Sept. 12, 2003.

Patricia G. Gaedeke, Jennifer J. Peregord, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

David A. Koelzer, Federal Defender's Office, Flint, MI, for Defendant–Appellant.

BEFORE: DAUGHTREY and COLE, Circuit Judges; and SARGUS, District Judge.*

SARGUS, District Judge.

Shawn Derrick Robbs appeals his conviction on two counts of distribution of five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Robbs raises three assignments of error. First, he claims that the district court should have granted his motion for mistrial because of certain comments the court and prosecutor made in front of the jury; second, Robbs claims that the district court should have instructed the jury that drug quantity was an element of the offense; and third, Robbs claims that it was plain error for the court to instruct the jury that it was not to allow the possible guilt of others to influence the jury's decision. For the rea-

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio Eastern Division, sitting by designation.

sons that follow, Robbs' conviction is AF-FIRMED.

## I.

Defendant–Apellant Shawn Derrick Robbs ["Robbs"] was arrested, indicted and later convicted before a jury on two counts of selling over five grams of cocaine base, *i.e.* crack cocaine, in violation of 21 U.S.C. § 841(a)(1). The sales took place one week apart, on November 13, 2000 and on November 20, 2000, near a house where Robbs was staying. Robbs allegedly made the sales to a government informant, Charles Cox.

Cox worked with the Flint, Michigan Area Narcotics Group ["FANG"] to make the two controlled purchases. Cox agreed to cooperate pursuant to a plea agreement. Cox had been arrested on charges of possession of cocaine and other illegal drugs as well as possession of two semi-automatic rifles and a semi-automatic pistol with a loaded ammo clip. One of the weapons Cox possessed was obtained in exchange for crack cocaine. Cox faced a potential mandatory minimum sentence of ten years with regard to the drug offense. He was not indicted on firearms charges.

In order to effectuate the controlled purchases, Cox was given $250.00 in pre-recorded money to buy two "eight-balls," three grams each, of crack cocaine. Cox also had a radio transmitter from which the FANG officers surveilling the location could listen. The transmissions were not recorded. (JA at 182). Cox called Robbs to set up each transaction. The calls were made in the presence of FANG officers. After each transaction, Cox met with the FANG officers. (JA at 159). No pre-recorded money was ever recovered from Robbs or anyone else. (JA at 181).

At his trial, Robbs attacked Cox's credibility and contended that Cox actually provided the crack cocaine. Robbs' counsel conducted a vigorous cross-examination of Cox, questioning him on the possible charges Cox could face as a result of his own illegal activities. As detailed *infra,* the questioning led to an exchange with the court on Cox's possible sentence, in the presence of the jury. At the end of the presentation of evidence, Robbs' counsel moved for a mistrial. (JA at 201). The court denied the motion but gave the jury a curative instruction. (JA at 240). Robbs' counsel preserved the issue for appeal. (JA at 218–19).

At the charge conference, Robbs' counsel requested an instruction that the quantity of cocaine base allegedly sold by Defendant was an element of the offense. (JA at 197). The court rejected the request but instructed the jury that if the Defendant was found guilty on either count, the jury would complete a special verdict form as to the quantity of drugs involved in the offense. (JA at 237). The court further instructed the jury that a finding as to the quantity of the drugs had to be supported by evidence beyond a reasonable doubt. (*Id.*). The jury found Defendant Robbs guilty of both counts and further found that the quantity of cocaine base for each count was 5 grams or more. (JA at 9).

## II.

### A. Motion for Mistrial

■ Robbs appeals the district court's denial of his motion for mistrial. The following questioning of Cox and the exchange between Robbs' counsel and the court provide the basis for the motion:

Q: You entered a Plea Agreement with the Government; correct?

A: Yes.

Q: And, the Government—the Guideline calculations are that you are

going to have to serve 120 to 135 months in prison, isn't that true?

A: Yes.

Q: And, you understand that in the federal system there is no parole?

A: Yes.

Q: And, you have an agreement with [the] Government, though, that they are going to ask to go below even what is otherwise the mandatory minimum sentence of 120 months; isn't that true?

A: Yes.

Q: And, they're going to ask that you receive a sentence of somewhere between 48 and 60 months; is that true?

A: Yes.

Q: So, instead of the at least 20 years that you were looking at originally, now you're down to—

A: No verbal response.

Mr. Jones: Judge—Judge, I—I'm going to object. I can't see on what good faith basis counsel can say there is a 20 year statutory minimum on Mr. Cox. There is—

Mr. Sasse: Your Honor, I can explain it, and he's admitted to it.

Mr. Jones: No, no. He—counsel has an obligation as an officer of the Court on that. The defendant is— this—Mr. Cox is facing a ten year statutory minimum.

The Court: A ten year—

Mr. Jones: Counsel is—

The Court: here?

Mr. Jones: Counsel is saying 20, and it's simply not the situation.

Mr. Sasse: Well, it is—

The Court: The Indictment is—is on a ten year mandatory—

\*    \*    \*    \*    \*    \*

The Court: The Plea Agreement happened—that's my point. The Plea Agreement happened subsequent to his indictment. The Indictment does not involve any firearms charge.

Mr. Sasse: I understand, but—

The Court: You can—

Mr. Sasse: in the arrest—

The Court: you can say, should have, would have, could have, but it didn't. The Plea Agreement involves the Indictment, and the indictment charges him with an offense that, as I understand it, carries a mandatory minimum of 120 months in prison. And, he plead[ed] guilty to that particular charge, as I understand it also from the testimony here, the Plea Agreement indicates that if he cooperates with the Government, they will recommend that he receive a lesser sentence than 120 months—

Mr. Sasse: That's correct.

The Court: not a less—lesser than 240 months, and that's what I think is rather misleading—

\*    \*    \*    \*    \*    \*

The Court: You've got sufficiently into the record that he was—when he was raided, he was in possession of all these firearms. He was indicted for a charge that did not include the firearms, and he's entered into a Plea Agreement which provides that the Government will recommend to me that when I impose sentence, he will be sentenced to considerably less than the—than the mandatory minimum under the Indictment if he cooperates with the Government. Now, you've got all of that before the jury and, of course, the jury has learned more about this than they ever would otherwise through this colloquy that has taken place over this particular issue. Now, if you want to go back and

hammer away about the gun charge, I'll let you do that, but—

Mr. Sasse: Your Honor, my—my only—

The Court: -all I'm trying to correct is the fact that I will instruct the jury that the Indictment charged him with—with an offense that carries a mandatory minimum of 120 months in prison; that's ten years. He might have been, I assume, he might have been charged with other offenses, but he was not. After he was charged with the offense carrying the 120 months mandatory minimum, he entered into a Plea Agreement with the Government, agreeing to cooperate in exchange for the Government recommending to me that I reduce the sentence below the 120 month mandatory minimum, and I think that's where we are really.

Now, if you want to go back and question him about the—the gun matter, I will permit you to do that, but I just didn't want to—I think the impression was created that the indictment carried a 20 year mandatory minimum, and I wanted to correct that. I want to—and I think Mr. Jones' position in that regard was well taken. Now, if you want to go back and—and—and point out again that he could have been perhaps indicted on other charges, I'll let you do that.

Mr. Sasse: Your Honor, I—I apologize if you feel that I misl[ed] anyone. I didn't intentionally mislead anyone.

The Court: All right. I don't claim that you intentionally misl[ed], but I think the jury might have gained the impression from your remarks that his mandatory minimum on the Indictment in which he is now charged and has been convicted by his plea of guilty carried a 240 month, that is a 20 year mandatory minimum sentence.

(JA at 81–87).

Following this exchange, Robbs' counsel resumed his cross-examination of Cox, asking only one additional question. After the jury was dismissed for the day, counsel had a brief discussion with the court as to whether Cox could have been charged under § 924(c). (JA at 88–92). The next day, after the close of evidence and during a charge conference, Robbs' counsel made a motion for mistrial, arguing that his questioning of Cox was in good faith but that both the prosecutor and the court stated, in open-court, that he was trying to mislead the jury. (JA at 201). The court denied the motion but ruled that he would give the jury a curative instruction as to Cox's possible sentence. (JA at 209–10). The following instruction was given:

Instruction No. 23A: Also, deals with the testimony of Charles Cox. During the testimony of Charles Cox a dispute arose as to whether Mr. Cox was facing a 20 year or a 10 year statutory minimum. Under his Indictment, he is facing a 10 year statutory minimum which may be reduced to a lower sentence due to Mr. Cox's cooperation. However, he may have had higher exposure, perhaps up to a 20 year statutory minimum, if the Government thought it could convict him of a firearms violation and charged him in that manner. These are all matters that you may consider in evaluating Mr. Cox's testimony. Remember, too, that nothing I have said or done during this trial was meant to influence your decision in any way.

(JA at 240). Defendant Robbs' counsel agreed to this instruction but preserved the matter for appeal. (JA at 218–19).

This Court reviews a district court's decision to deny a motion for mistrial under an abuse of discretion standard. *United*

*States v. Tocco*, 200 F.3d 401 (6th Cir. 2000). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Id.*, quoting *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir.1994).

In this case, Robbs argues that his counsel's cross-examination of Cox was interrupted "in a significant and ultimately highly prejudicial way." (Appellant's Brief at 11). In particular, Robbs contends that both the prosecutor and the court accused his counsel of misleading the jury. Robbs argues that, as a result of the exchange, the jury was left with an "unmistakable impression ... that defense counsel had tried to mislead the jury regarding the central witness of the entire case." (*Id.* at 14).

As to the trial judge, this Court has observed that the role the judge plays indeed has the potential to influence a jury. In *United States v. Hickman*, 592 F.2d 931, 933–34 (6th Cir.1979), this Court stated:

> Assuming that a trial judge has good reason to interject himself into the trial, the manner in which he does so is crucial. Thus, an objective demeanor is important. Outright bias or belittling of counsel is ordinarily reversible error. However, under some circumstances, misconduct by a trial judge may not mandate reversal.
>
> More common is the appearance of partiality which can easily arise if the judge intervenes continually on the side of one of the parties. Our system of criminal jurisprudence hinges upon the advocacy role played by opposing counsel. Although a trial is a quest for the truth, and a federal trial judge is more than a neutral arbiter, interference with the presentations of counsel has the potential of making a mockery of a defen-

dant's right to a fair trial, even in the absence of open hostility.

*Id.* (citations omitted).

This Court finds that the comments made by the trial judge do not amount to outright bias or belittling of Robbs' counsel, nor do the comments show partiality toward the Government. The record reveals that the court's comments were made only after the prosecutor objected to a question posed by Robbs' counsel to Cox. The question posed by Robbs' counsel gave the jury the inaccurate impression that Cox was facing "at least 20 years" in prison when, in fact, he was not. (JA at 82). The trial judge clarified the matter by observing that Cox had been indicted on a charge carrying only a ten year mandatory minimum sentence, while other uncharged conduct may have had the potential of adding a second, consecutive mandatory sentence. (*Id.*). Robbs' counsel conceded that Cox had not been indicted on a firearms offense. (JA at 83). Moreover, the court acted appropriately in clarifying a misleading question posed by Robbs' counsel.

■ Robbs also challenges the comments made by the prosecutor during the exchange between the court and counsel. In particular, Robbs points to the prosecutor's statement that he could see no "good faith basis [on which] counsel can say there is a 20 year statutory maximum on Mr. Cox ... Counsel has an obligation as an officer of the Court on that." (JA at 82).

This Court has adopted a two-step approach for determining whether a prosecutor's conduct warrants a mistrial. First, the Court must consider whether the prosecutor's remarks were improper and then, the Court must determine whether the impropriety amounts to reversible error. *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir.1996), citing *United States v.*

*Carroll,* 26 F.3d 1380, 1385 (6th Cir.1994). As to the second part, the Court considers whether the remarks tended to mislead the jury or prejudice the accused, whether the remarks were isolated or extensive, and whether the remarks were deliberately or accidentally made. The Court must also consider the strength of evidence against the accused. *Id.* (citations omitted).

In this case, the Court concludes that the prosecutor's comments made during the exchange with the court were not improper. The prosecutor's remarks were made to clarify a misleading question posed by Robbs' counsel regarding the possible sentence Cox would face. The trial judge's decision to deny the motion for mistrial, which was in part based on the prosecutor's remarks, was not error.

**B.** *Apprendi* **Issue**

■ In his second basis for appeal, Robbs asserts that it was error for the district court to use a special verdict form to ascertain the drug quantity as to each of the counts charged. According to Robbs, under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the court should have instructed the jury that drug quantity was an element of the offense.

In *Apprendi,* the United States Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at

490. Similarly, in *United States v. Garcia,* 268 F.3d 407, 413 (6th Cir.2001), this Court held that "the determination of drug quantity, when it subjects a defendant to enhanced sentencing under § 841(b), constitutes an element of the offense that the government must prove to the jury beyond a reasonable doubt." [2]

In this case, the district court gave the jury the following instructions:

> Instruction No. 14: The elements of Counts 1 and 2. Counts 1 and 2 of the Indictment allege distribution of cocaine. For you to find the defendant guilty of distribution of cocaine, the Government must prove each and every one of the following elements beyond a reasonable doubt. First, that the defendant distributed or transferred cocaine and, second, that the defendant did so knowingly and intentionally.
>
> The term to distribute as used in these instructions means to deliver or to transfer, or attempt to deliver or transfer, possession or control of something from one person to another. The term to distribute includes the sale of something by one person to another. The term knowingly as used in these instructions to describe the state of mind of the defendant means that the was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake or accident. If you are convinced that the Government has proved all of these elements, say so by returning a guilty verdict on the charge.

---

**2.** *Garcia* held that *Apprendi* applies to both mandatory minimums and to statutory maximums. The Supreme Court subsequently held that a factor that increases the minimum, but not the maximum, sentence to which a defendant is subject is a sentencing factor and, therefore, need not be proven to a jury beyond a reasonable doubt. *Harris v.*

*United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *United States v. Leachman,* 309 F.3d 377 (6th Cir.2002). This case, however, involves both a mandatory minimum and a statutory maximum factor, which, under *Apprendi,* must be proven to the jury beyond a reasonable doubt.

If you have a reasonable doubt about any of these—any one of these elements, then you must find the defendant not guilty of this charge.

Instruction No. 15: In the event that you find the defendant guilty of Counts 1 or 2, the verdict form also requires you to make an additional finding as to the quantity of drugs distributed; that finding, that is as to the quantity of drugs, also must be beyond a reasonable doubt, and the amounts are listed on the verdict form which I will be discussing with you in a few moments.

(JA at 236–37).

With respect to the special verdict form, the district court explained:

When you have reached a unanimous agreement as to your verdict on Count 1, then your Foreperson should mark the appropriate space with an "X" mark or a check mark indicating that that is your unanimous verdict on that count. Then, down below, it says, "If you find the defendant guilty of Count 1, then state your unanimous verdict as to the quantity of crack cocaine for which he should be held accountable." And, there are two spaces there. The first space says. "Less than five grams of cocaine base in the form of crack cocaine," and the other space says. "Five grams or more of cocaine base in the form of crack cocaine." And, then when you have reached unanimous agreement, and then, of course, you would only get to that matter if you—your verdict has been guilty on Count 1. When you have reached unanimous agreement as to the quantity, then that space should be appropriately marked. And, again, you can't mark either of those spaces as to quantity until you unanimously agree as to the quantity.

And, then—and then it goes on to say on the next page, "We, the Jury, by unani-mous verdict, find the defendant, Shawn Darrick Robbs," Count 2, again a space for not guilty and a space for guilty. And, when you have reached unanimous agreement that space ought to be marked in the same fashion as I indicated for Count 1.

And, then if your verdict is guilty on Count 2, then you would proceed to the question underneath which says, "If you find the defendant guilty of Count 2, then state your unanimous verdict as tot he quantity of crack cocaine for which he should be held accountable." And, again, there are the two spaces. The first space, "Less than five grams of cocaine base in the form of crack co-caine," and the second space, "Five grams or more of cocaine base in the form of crack cocaine." Again, the questions can only be answered when you have unanimously agreed as to the answer to be given.

(JA at 244–46).

In *United States v. Nash*, 175 F.3d 429, 436 (6th Cir.1999), this Court held that jury instructions are "reviewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." Based on record in this case, it is clear that *Apprendi* was satisfied despite the fact that the district court did not refer to the drug quantity finding as an "element" of the offense. The district court instructed the jury that, if it found the Defendant guilty on either or both counts, the jury would then determine, by unanimous verdict, the quantity of crack cocaine as proven by evidence beyond a reasonable doubt. The instructions and the special verdict forms used adequately informed the jury of its obligations as to the finding of drug quantity. The jury determined beyond a reasonable doubt that the amount was in excess of five

grams. Robbs' appeal of this issue is without merit.

### C. "Possible Guilt of Others" Issue

■ In his third basis for appeal, Robbs argues that it was plain error for the district court to instruct the jury as to the possible guilt of others. The instruction given follows Sixth Circuit Pattern Jury Instruction 8.08. The court stated:

Instruction No. 30: Remember, that the defendant is only on trial for the particular crimes charged in the Indictment. Your job is limited to deciding whether the Government has proved the crimes charged. [Also remember that whether anyone else should be prosecuted and convicted for a crime is not a proper matter for you to consider. The possible guilt of others is no defense for a criminal charge. Your job is to decide if the Government has proved this defendant guilty. Do not let the possible guilt of others influence your decisions in any way.]

(JA at 246–47).

The Committee Commentary to Instruction 8.08 provides that the portion noted above in brackets "should not be given in every case ... Where the defendant claims that someone else committed the crime, it may be confusing to instruct the jurors that they should not be concerned with anyone else's guilt." (Sixth Circuit Pattern Instr., Comm. Commentary 8.08).

Robbs' counsel did not object to the instruction. On appeal, Robbs claims that the instruction was misleading and prejudicial and interfered with his Sixth Amendment right under the United States Constitution to present a defense. In support of this position, Robbs points to a note sent by the jury during deliberations inquiring as follows: "Can we know where Charles Cox came from before he met at the ATF building?" and "How did Charles Cox get his car?" (JA at 223). The district court responded to these questions, with the consent of counsel, as follows: "I cannot respond to your questions. These are not matters in evidence in this case." (JA at 224).

This Court reviews jury instructions to which the defendant did not object for plain error. "[R]eversal is only required in those exceptional circumstances where necessary to avoid a miscarriage of justice." *United States v. Hatchett*, 918 F.2d 631, 643 (6th Cir.1990). In this case. the Court cannot conclude that the decision to instruct the jury as to the consideration of guilt of others was either plain error or amounts to a miscarriage of justice. The record reflects that the closing argument made by Robbs' counsel focused on the suggestion that Cox had framed Robbs in order to obtain a reduction in his own sentence. In rebuttal, the Government argued that Cox had been too closely supervised by government agents to have done this and that the drugs at issue had to have come from Robbs. The instruction was clearly appropriate in light of the nature of the defense. The jury could have concluded that Cox was also a drug dealer who had not been charged. Thus, the possible guilt of Cox, as the instruction noted, gave no defense to Robbs. The giving of the instruction was neither plain error nor a miscarriage of justice. Consequently, Robbs' third basis for appeal is without merit.

### III.

In light of the foregoing, Robbs' conviction is **AFFIRMED.**

IT IS SO ORDERED.