**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**File Name: 12a0693n.06**

**No. 11-1166**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jun 29, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | **)** | |
| | **)** | ON APPEAL FROM THE |
| Plaintiff-Appellee, | **)** | UNITED STATES DISTRICT |
| | **)** | COURT FOR THE EASTERN |
| v. | **)** | DISTRICT OF MICHIGAN |
| | **)** | |
| ALBERTO FLORES, | **)** | **OPINION** |
| | **)** | |
| Defendant-Appellant. | **)** | |
| | **)** | |

**BEFORE:** **WHITE, STRANCH, and FARRIS[*], Circuit Judges**.

**FARRIS, Circuit Judge.** Alberto Flores argues that the district court committed reversible error when it called as its own witness and questioned a declarant of out-of-court statements. We affirm.

Flores and ten co-defendants were indicted for conspiracy to distribute with intent to import and to import pseudoephedrine from Canada into the United States, in violation of 21 U.S.C. §§ 959(a)(1) and 960(d)(3). Flores waived his right to trial by jury and elected to have a bench trial. The government called as witnesses two co-defendants who had previously pled guilty, Enrique Barajas, also known as Enrique Sanchez, and Nasir Baste. The government also introduced out-of-court statements of co-defendant Shahin Judeh through Sanchez's and Baste's testimony. Judeh had

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

also pled guilty, but the government chose not to call him as a witness. He had recanted testimony in a separate matter, and the government did not want to raise any possibility that Judeh should receive a reduction in sentence.

The district court expressed concern that the out-of-court statements lacked sufficient independent corroborating evidence to be admissible under Federal Rule of Evidence 801(d)(2)(E), and it called Judeh as its own witness. After hearing Judeh, the district court found Flores guilty and sentenced him to 186 months in prison, to run concurrently with the sentence for a conviction in the Eastern District of Kentucky.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Mick*, 263 F.3d 553, 566 (6th Cir. 2001). We also review a district court's conduct during trial, including its decision to call and question witnesses, for abuse of discretion. *McMillan v. Castro*, 405 F.3d 405, 409 (6th Cir. 2005) (citation omitted); *Fielding v. United States*, 164 F.2d 1022, 1023 (6th Cir. 1947). We review for clear error the preliminary question of fact whether the government has met its burden to establish the admissibility of out-of-court statements. *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005). Hostile or biased conduct by a district court, particularly in the presence of a jury, is structural error that requires automatic reversal. *McMillan*, 405 F.3d at 410 (citation omitted). If there is constitutional error that does not infect the entire trial process and make the trial fundamentally unfair, however, we review that error for prejudice under the *Chapman* harmless-error standard. *Neder v. United States*, 527 U.S. 1, 8 (1999); *United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir. 1990). Such error is harmless only if we can declare beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18, 24 (1967); *Martin*, 897 F.2d at 1372.

The district court's "function [is] to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties." *Knapp v. Kinsey*, 232 F.2d 458, 466 (6th Cir. 1956). In fulfilling that function, it may call witnesses on its own motion and interrogate those witnesses. Fed. R. Evid. 614. "While we do not look with favor on extensive examination of witnesses by the trial judge in a jury trial," even in a jury trial the court may intervene "when necessary to clear up confusion in the evidence or to supplement, in an impartial fashion, the presentation of a poorly prepared attorney." *McMillan*, 405 F.3d at 410 (citations, quotation marks, and indications of alterations omitted). In reviewing whether the district court had a good reason to call or question a witness, we consider such factors as the nature and complexity of the issues at trial, whether the attorneys were unprepared or obstreperous, and whether it was difficult for counsel to deal with a witness without such intervention. *McMillan*, 405 F.3d at 410; *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979).

The district court must also maintain an objective demeanor while intervening. *Hickman*, 592 F.2d at 933. The court may demonstrate personal bias or prejudice through remarks and handling of the trial that indicate "hostility to one of the parties, . . . unwarranted prejudgment of the merits of the case, or an alignment . . . with one of the parties." *Knapp*, 232 F.2d at 466 (citation omitted). Factors to consider include "the tone of the judicial interruptions, the extent to which they were directed at one side more than the other, and the presence of any curative instructions at the close of the proceedings." *McMillan*, 405 F.3d at 410 (citation omitted).

The requirement of impartiality imposes an additional limitation on the district court's decision to call a witness. The court may call a witness who provides important testimony, particularly when the court calls that witness at the request of one of the parties. *Cf. Litsinger v.*

*United States*, 44 F.2d 45, 47 (7th Cir. 1930) (witness called by the court at the government's request "proved the government's case in every detail except the identity of the appellants"). Moreover, the court may elicit testimony that favors one party over another, as long as there is no "strategic focusing of judicial questioning to favor" that party. *United States v. Smith*, 561 F.2d 8, 14 (6th Cir. 1977). The court may not become a party's advocate, however. As the Fourth Circuit held, a court destroys its impartiality when it "undertakes to produce evidence" that is "essential to overcome the defendant's presumption of innocence" or when "the government's case would be insufficient as a matter of law without the court witnesses." *United States v. Karnes*, 531 F.2d 214, 216-17 (4th Cir. 1976).

The district court here offered good reasons for injecting itself into the trial. *See McMillan*, 405 F.3d at 410; *Hickman*, 592 F.2d at 933. It wanted to bypass second-hand accounts of Judeh's statements about Flores' role in the conspiracy and hear from someone who had "greater personal knowledge of the events and actions at issue." The court also referred to the opportunity Flores would have to cross-examine Judeh, whose out-of-court statements Flores could not otherwise impeach.

The district court's conduct did not demonstrate the personal bias or prejudice that would require automatic reversal. Its conduct and remarks did not indicate hostility to Flores, unwarranted prejudgment of the merits, or the court's alignment with the government for the purpose of furthering or supporting the government's contentions. *Knapp*, 232 F.2d at 466. The court's behavior certainly does not rise to the level of the behavior of the court in *Hickman*, "one of the few cases in which a judge's conduct during trial has led to the reversal of a conviction." *United States v. Hynes*, 467 F.3d 951, 958 (6th Cir. 2006); *see Hickman*, 592 F.2d at 932-36 (noting the district court became a

"surrogate prosecutor" whose conduct "must have left the jury with a strong impression of the judge's belief of the defendant's probable guilt"). Rather, in calling Judeh, the court referred to the opportunity Flores would have to impeach Judeh's testimony and noted that it was "not yet known what effect . . . Judeh's testimony [would] have on the trial, and which side (if either) this testimony [would] favor."

The remaining question, then, is whether the government's case was sufficient as a matter of law without the evidence provided by the court's witness, and thus whether Judeh's out-of-court statements would have been admissible if he had not testified. For a coconspirator's statement to be admissible against a defendant, the government must show by a preponderance of the evidence that a conspiracy existed, that the conspiracy involved the declarant and the defendant, and that the statement was made in furtherance of and during the course of the conspiracy. Fed. R. Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Martinez*, 430 F.3d 317, 325 (6th Cir. 2005). The district court may consider the statements in determining their admissibility, *Martinez*, 430 F.3d at 325, but "the defendant's knowledge and participation in the conspiracy must be supported by independent, corroborating evidence." *United States v. Benson*, 591 F.3d 491, 502 (6th Cir. 2010) (citation omitted).

Here, the district court likely erred in calling Judeh as a witness if it suspected that the out-of-court statements related by Baste and Sanchez would be inadmissible without Judeh's testimony. If the court believed that critical evidence to the government's case was inadmissible, it should have so ruled. Nevertheless, this was not a jury trial, and we have held that the concerns underlying a trial judge taking an active role are diminished when a jury is not present. *United States v. Morrow*, 977 F.2d 222, 225 (6th Cir. 1992). As the record does not show any bias or prejudice by the court, the

court's intervention is unlikely to be prejudicial. *Cf. Jackson v. United States*, 329 F.2d 893, 894 (D.C. Cir. 1964) ("In a nonjury case . . . needless or active interrogation by judges . . . is rarely prejudicial").

The record satisfies us that any possible error by the district court was harmless. Sanchez and Baste testified from their personal experience as well, and that testimony provides independent corroboration of Judeh's out-of-court statements. The out-of-court statements also provide some evidence of the conspiracy and of Flores' participation in it, and the out-of-court statements related by Baste provide some corroboration of the statements related by Sanchez, and vice versa.

The record also includes a picture of Flores traveling to Montreal, where actions contemplated by the conspiracy occurred, and a stipulation that he traveled there. As the district court wrote, "the circumstances surrounding the . . . trip itself give rise to a reasonable inference that [Flores] went on this trip as a knowing and willful participant." Testimony indicates that it was a short trip devoted entirely to driving to Montreal, where payment was made for a future shipment of pseudoephedrine pills. In addition, as the district court noted, there "was no evident purpose" for the preceding leg of the trip, from Chicago to Michigan, other than to turn money over to the coconspirators traveling to Canada and to allow Flores to join them.

Given the record, Judeh's out-of-court statements would have been admissible under Federal Rule of Evidence 801(d)(2)(E) even without Judeh's testimony. The district court did not abuse its discretion in admitting the statements. Therefore, the court did not provide evidence necessary for the government to make its prima facie case. In any event, any potential error was harmless. Moreover, the district court had a good reason for interjecting itself into the trial and maintained an objective demeanor in doing so.

**AFFIRMED.**