**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0606n.06
Filed: August 22, 2006

**No. 05-1434**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

**v.**                                  **ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
JAMES LOSSIA,**                 **EASTERN DISTRICT OF MICHIGAN**

    **Defendant-Appellant.**

                                  /

**BEFORE:    BATCHELDER, CLAY, and ROGERS, Circuit Judges.**

    **CLAY, Circuit Judge.**  Defendant James Lossia appeals the March 21, 2005 order of the

United States District Court for the Eastern District of Michigan, sentencing Defendant to 98 months

imprisonment and 36 months of supervised release for Defendant's violations of 18 U.S.C. §§

1028(a)(7), 1029(a)(2), identify theft and access device fraud.  Defendant argues that the district

court committed numerous errors in sentencing, including an unjustifiable upward departure from

the Sentencing Guidelines recommended range for his offense of conviction.

    For the following reasons, we **AFFIRM** Defendant's sentence.

## I.

## BACKGROUND

On September 28, 2004, a two-count information was filed against Defendant, alleging that Defendant committed identify theft, in violation of 18 U.S.C. § 1028(a)(7), and access device fraud, in violation of 18 U.S.C. § 1029(a)(2). Defendant waived indictment and thereafter entered a plea agreement with the government, whereby Defendant agreed to a sentencing range of 77 to 96 months. As part of the plea agreement, the government also promised to move for a downward departure in exchange for substantial assistance. The sentencing judge rejected this plea agreement, however, at Defendant's first sentencing hearing on February 25, 2005. The district court then gave Defendant one month in which to reconsider his decision to plead guilty.

After taking one month to reconsider his plea of guilty, Defendant decided to move forward with a plea of guilty without the benefit of an accepted plea bargain. According to the Presentence Investigation Report, Defendant's adjusted offense level was 19 and his criminal history score a 28, placing him in the highest criminal history category, Category VI. The recommended sentence was therefore 63 to 78 months of incarceration. U.S. Sentencing Guidelines Manual § 5A (2004). The district court determined that a greater sentence was called for, in large part because of Defendant's extensive criminal history of committing the same type of crimes. In reaching its sentencing determination, the district court rejected Defendant's objections to the Presentence Investigation Report's calculation of his criminal history score, determining that, contrary to Defendant's contentions, certain of Defendant's prior offenses were not "related" such that they merited fewer criminal history points. The district court therefore sentenced Defendant to 98 months incarceration,

to be followed by three years of supervised release.  The maximum statutory incarceration term for Defendant's violation of 18 U.S.C. § 1028(a)(7) is 15 years.  18 U.S.C. § 1028(b)(1).  The maximum statutory incarceration term for a violation of 18 U.S.C. § 1029(a)(2) is 10 years.  18 U.S.C. § 1029(c)(1).

Defendant filed a timely notice of appeal.

## II.

## ANALYSIS

**A.      The District Court Correctly Calculated Plaintiff's Advisory Guidelines Sentence**

After *United States v. Booker*, 543 U.S. 220 (2005), this Court reviews a sentence for both procedural and substantive reasonableness.  *United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006); *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).  An element of reasonableness is the correct calculation of the advisory Guidelines sentence.  *See United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006); *United States v. Richardson*, 437 F.3d 550, 553-54 (6th Cir. 2006); *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005); *Webb*, 403 F.3d at 383.  Sentencing with an improperly calculated advisory Guidelines range is unreasonable because the sentencing court lacks a required input into the process.  *See* 18 U.S.C. § 3553(a) (requiring sentencing courts to consider the applicable Guidelines range); *cf. United States v. Cortez*, 166 Fed. App'x 196, 197 (6th Cir. 2006).

In determining whether a district court correctly determined whether prior sentences were "related" for purposes of Guideline § 4A1.2(a)(2), this Court "continue[s] . . . to apply the standards of review . . . applied prior to *Booker*," *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005),

and thus will not overturn a district court's determination as to whether offenses are related unless that court has committed a clear error, *United States v. Horn*, 355 F.3d 610, 613 (6th Cir.), *cert. denied*, 541 U.S. 1082 (2004) ("We must review deferentially, that is, for clear error, the . . . district court's determination that [defendant's] prior robbery convictions were not related.").

Defendant argues that his Guidelines' sentence calculation was in error in two ways. First, Defendant argues that the district court improperly refused to consider certain of his prior offenses "related" for purposes of calculating Defendant's criminal history category. Second, Defendant argues that the district court improperly refused to grant the government's motion for downward departure under § 5K1.1 of the Guidelines for Defendant's substantial assistance.

> 1. *The District Court Did Not Commit Clear Error in Finding That Defendant's Prior Convictions Were Not "Related" for Purposes of § 4A1.2(a)(2) of the Guidelines*

Defendant alleges that the district court erred in computing his criminal history category because certain prior offenses were "related" within the meaning of § 4A1.2(a)(2) of the Sentencing Guidelines. In particular, Defendant argues that these offenses were part of a "single common scheme or plan" and should have been treated as one crime for sentencing purposes.

Chapter Four, Part A of the Sentencing Guidelines delineates the assessment of points for an offender's prior sentences for the purpose of computing his Criminal History Category. Section 4A1.2 is the guideline provision used for determining whether prior sentences are to be treated as one sentence for assigning criminal history points and states in pertinent part:

(a)　　Prior Sentence Defined.

(1)　　The term "prior sentence" means any sentence previously imposed upon adjudication of guilt whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

(2)     Prior sentences imposed in unrelated cases are to be counted separately.  Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c).

Application Note 3 to § 4A1.2 provides:

Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest . . . .  Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

In the instant case, Defendant argues that certain of his prior offenses were "related" because they were part of a "single common scheme or plan."  This Court has held that "scheme" and "plan" are "words of intention, implying that [offenses] have been jointly  planned, or at least that . . . the commission of one would entail the commission of the other as well."  *United States v. Irons*, 196 F.3d 634, 638 (6th Cir. 1999).  The criminal defendant carries the burden of proving that prior offenses and their sentences are "related."  *Id.*

In the instant case, Defendant's arguments center around his sentences handed down on April 14, 1997, November 19, 1999, and November 13, 2002.  On each of those dates Defendant was sentenced for multiple counts of varying types of financial fraud.  Defendant argues that all counts for which Defendant was sentenced on the same day should be "related" for purposes of § 4A1.2.  In support of this contention, Defendant points out that for each day of sentencing the crimes were for the same or similar offenses, that they shared a "modus operandi," that they happened in close temporal and geographic proximity to each other, that in many instances they were investigated by

the same police officer, and that they were sentenced by the same judge on the same day. (J.A. at 15.)

This Court has rejected all of Defendant's arguments in prior cases. Merely because a court system takes a functional approach to sentencing a defendant convicted of multiple crimes, treating all charges at the same sentencing hearing and even sentencing the defendant to concurrent sentences, this Court will not automatically treat the crimes as "related" for purposes of § 4A1.2. *See United States v. Smith*, 905 F.2d 1296, 1303 (9th Cir. 1990) (rejecting proposition that concurrent sentences automatically indicated that the offenses were "related" for purposes of § 4A1.2). There must be a formal order of consolidation (thus qualifying under subpart (3) of Application Note 3 on what constitutes related crimes), *United States v. Coleman*, 964 F.2d 564, 566 (6th Cir. 1992), or the crimes must be part of a "common plan or scheme" as Defendant alleges here.[1]

This Court has held that "neither close geographic or temporal proximity commands a finding that the defendant jointly planned the crimes." *Irons*, 196 F.3d at 640. Neither does the sharing of a "modus operandi" makes the crimes related. *United States v. Cowart*, 90 F.3d 154, 159 (6th Cir. 1996). Hence, prior convictions are not "related" merely because they are part of a crime spree. *Irons*, 196 F.3d at 640. Instead, Defendant must present evidence that the crimes were "jointly planned" or that "the commission of one offense necessarily requires the commission of the

---

[1]Defendant does not argue that the cases were formally consolidated for sentencing, nor could he, because on each occasion of sentencing he was sentenced under multiple indictments and court docket numbers. (J.A. at 116-128); *see also Coleman*, 964 F.2d at 566 (taking separate docket numbers as an indication that the cases were not formally consolidated).

other." *Id.* at 638. Defendant has presented no such evidence of joint planning to this Court. Nor

has Defendant presented evidence that the commission of one of the crimes necessarily involved the

commission of the other crimes for which he was sentenced on the same day. Indeed, Defendant

fails to address the crimes individually and instead has relied on his general argument that the joint

sentencing and similar nature of the offenses makes the crimes part of a common scheme or plan.

The district court therefore did not clearly err in refusing to find that Defendant had proven that each

sentencing date encompassed "related" offenses for purposes of § 4A1.2.

> 2.     *This Court Does Not Review a District Court's Refusal to Grant a Discretionary Downward Departure Under § 5K1.1 in the Calculation of the Advisory Guidelines Sentence*

This Court has set forth the limited extent to which it will review a district court's refusal

to grant a downward departure for substantial cooperation under the Sentencing Guidelines:

> [T]he decisions whether to depart and how much to depart are entirely committed to the district judge's discretion. U.S.S.G. § 5K1.1; *United States v. Gregory*, 932 F.2d 1167, 1169 (6th Cir. 1991). The exercise of appellate jurisdiction is proper only in the rare case in which the district court erroneously thought that it lacked the authority to grant a departure. *Schray*, 383 F.3d at 433-34; *United States v. Smith*, 278 F.3d 605, 609 (6th Cir. 2002); *United States v. Farrow*, 198 F.3d 179, 199 (6th Cir. 1999); *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995).

*United States v. Jones*, 417 F.3d 547, 550-51 (6th Cir. 2005).

Defendant in the instant case does not argue that the district court misunderstood its authority

to include a § 5K1.1 departure. Rather, Defendant disputes only the district court's rationale for

allegedly not granting the departure.[2]   This Court does not review a district court's conscious

---

[2]Defendant may be additionally mistaken in his factual premise for this argument on appeal. Defendant argues as if the district court refused to consider a § 5K1.1 departure. In the district court's judgment, the district court stated that it "granted the Government's motion for a downward

exercise of its discretion to include or not include a § 5K1.1 departure in its calculation of the advisory Guidelines' sentence. *Id.*

**B.      The District Court Did Not Exhibit Improper Bias Toward Defendant**

*1.      Plain Error Review Applies*

Defendant did not object to the district court's alleged bias below. This Court reviews allegations of a district court's bias for plain error when the has defendant failed to challenge the alleged bias below. *See United States v. Johnson*, No. 04-2371, 2006 U.S. App. LEXIS 11694, at *24 (6th Cir. May 10, 2006). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006).

*2.      The Trial Court Did Not Exhibit Impermissible Bias or Prejudice*

We find that Defendant fails to establish the first element of plain error; the district court's actions and statements do not rise to the level of impermissible bias or prejudice.

In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court provided guidance as to when a district court's remarks or rulings amount to a level of bias that denies a defendant a fair trial:

> Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or

departure." (J.A. at 155.)

antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal on opinion that derives from an extra judicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible . . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

*Id.* at 555-56. Further, unfavorable judicial rulings almost never constitute judicial bias. *Id.* at 555.

Defendant argues that the district court's inclination to depart upward from the Guidelines range, its refusal to consider Defendant's prior offenses "related" for § 4A1.2 purposes, and select comments from the district court during the sentencing hearing, "exhibit[] a judicial predisposition that goes beyond what is normal and acceptable." (Def. Br. 35.) In particular, Defendant now objects to comments made by the district judge that Defendant's identify theft crimes "ruined lives," that the victims "can't get credit, they can't buy anything," and that Defendant's crimes were just as bad or even worse than physical robbery of the victims. (*See* J.A. at 99-104.) Defendant avers that the district court misunderstood the nature of his crimes because the "victims" of his crimes were not individuals, but the credit companies; the Presentence Investigation Report lists the recipients of restitution as a series of credit card companies and banks.

Because Defendant points to no extrajudicial source of the judge's alleged bias, we presume that Defendant is relying on that prong of the *Liteky* test which says that there exists impermissible bias if a judge's comments "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. We find that Defendant's evidence of alleged bias

fails to show such antagonism, and therefore Defendant has failed to show plain error. *See, e.g., United States v. Hickman*, 592 F.2d 931, 935 (6th Cir. 1979). In *Hickman*, this Court found plain error where the district court interjected itself more than 250 times in a one-day trial, took it upon itself to rehabilitate witness testimony after defense counsel had conducted cross-examination, and did not wait for objections, but "would *sua sponte* interrupt a witness or counsel, with the words 'objection sustained' and then proceed to state why the witness' testimony was in some way objectionable." *Id.* at 932-35. Further, the district court in *Hickman* cut off defense counsel in closing argument and, in the jury's presence, admonished that "I won't let you tell them rotten law." *Id.* at 936.

In the instant case, the district court's correct ruling that Defendant had failed to establish the relatedness of his prior offenses cannot be the basis of a bias finding. *See Liteky*, 540 U.S. at 555. Similarly, the district court's exercise of its discretion in imposing a sentence greater than that which the Sentencing Guidelines recommend cannot, standing alone, establish bias. *Id.* Defendant is therefore left with the statements pertaining to victim impact and likening Defendant's crime to violent robbery in support of his bias argument. The district court did not misunderstand the nature of Defendant's crimes. Although the ultimate bearers of the financial loss in Defendant's case were the credit companies, the consumers whose identities Defendant usurped had to pursue affirmative remedies through these same credit companies in order to establish that Defendant's expenditures were fraudulent. It is common knowledge in such cases that damage to an individual's credit is not atypical, and certainly affirmative effort is required on the part of the consumer in order to ensure that there is no long term damage to the consumer's credit worthiness. The district court's

characterization of Defendant's victims, then, was not out of bounds, nor the type of impermissible antagonism which would implicate the fundamental fairness of Defendant's sentence.

Finally, Defendant argues that the district court's analogy of Defendant's crimes to physical robbery and personal violence necessarily implies impermissible bias, because Defendant's crimes were not "crimes of violence" as understood in the penal code. In this case, the district court's comments must be taken in context. During the sentencing hearing, defense counsel argued for a downward departure, stating that "[h]e's not murdering people. He's not doing violent crime." (J.A. at 98.) The district court responded by asking, somewhat rhetorically: "It wasn't doing violence to his victims, these people whose identifies were stolen?" (J.A. at 99.) After continued argument by defense counsel as to why Defendant was not as bad a criminal as a "bank robber," the judge responded: "No, it would have been better if he were a bank robber or better if he just stuck these people up at their mailboxes and just taken their cash. What he did stays with them and with them and with them." (J.A. at 99-100.)

Defendant invited the analogy to robbery, and the district court's use of that analogy did not show impermissible bias, but demonstrated the judge's informed perception of the extent and nature of Defendant's crimes. Moreover, even were this Court to construe the district court's statements as exhibiting his own position on the subject, "judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 540 U.S. at 555.

In summary, Defendant has failed to show that the district court demonstrated impermissible bias or hostility such that Defendant was denied a fair sentencing. Further, because Defendant failed

to object to the district court's alleged bias during the sentencing hearing, Defendant must meet the plain error standard.  Even were the Court to assume that the district court's statements were questionable, the proceedings below were certainly not the type that would "seriously affected the fairness, integrity or public reputation of the judicial proceedings," *Abboud*, 438 F.3d at 583, as would be necessary to satisfy plain error review.

**C.      The District Court Did Not Commit Plain Error in Sentencing Defendant**

*1.      Plain Error Review Applies*

Defendant has failed to preserve this issue for review.  Although Defendant objected below to the district court's calculation of the advisory Guidelines sentence, and argued generally for a downward departure from the Guidelines before the district court handed down its sentence of 98 months incarceration, Defendant did not lodge a complaint with the district court about the sentence as ultimately imposed.

Because Defendant failed to object to the sentence when handed down by the district court, this Court reviews Defendant's sentence only for plain error.  *United States v.Willis*, No. 05-5434, 2006 U.S. App. LEXIS 10099, at *9 (6th Cir. Apr. 20, 2006).  "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Abboud*, 438 F.3d at 583.  The district court errs in sentencing a criminal defendant when the sentence is unreasonable.  *Booker*, 543 U.S. at 259.

*2.      No Plain Error Exists*

Defendant argues that the district court's decision to impose a sentence higher than that which the Sentencing Guidelines recommend is unreasonable. The Guidelines recommended a range of 63 to 78 months of incarceration for a criminal defendant with a Criminal History Category of VI and a total adjusted offense level of 19. The district court's ultimate sentence was 98 months incarceration, 20 months higher than the upper limit of the Guidelines' recommended range.

The district court's decision to impose a higher sentence was due, in large part, to the district court's assessment of Defendant's history. Before sentencing in the instant case, Defendant had 24 prior criminal convictions, almost all in the area of monetary fraud. Defendant's total criminal history score was a 28, whereas only 13 points were necessary to place Defendant in the Category VI offender for purposes of the Sentencing Guidelines, the highest category possible. Defendant therefore had twice the criminal history points of a threshold Category VI offender. The Guidelines themselves distinguish between sentences for defendants with varying criminal histories. A category I offender in Defendant's position, for example, would have had a recommended range of 30 to 37 months. *See* U.S. Sentencing Guidelines Manual § 5A (2004). Thirteen criminal history points separate a Category I offender from a threshold Category VI offender. *Id.* Because Defendant has twice as many criminal history points as a threshold Category VI offender, increasing his sentence by 20 months is both consistent with past Guidelines practice and reasonable in the post-*Booker* world, absent additional evidence that the sentence is somehow procedurally unreasonable.

Defendant attempts a procedural unreasonableness argument by asserting to this Court that the district court failed to consider Defendant's individual circumstances in imposing sentence. Although the district court did not specifically mention Defendant's personal problems, the district

court did reference Defendant's sentencing memorandum, in which Defendant outlines his past personal problems which might warrant leniency. Defense counsel did not present evidence of Defendant's personal history at the sentencing hearing, despite the district court's invitation to present or discuss any factors the defense felt might be pertinent to sentencing. Defendant also objects to the district court's apparent determination that Defendant's chances for rehabilitation are slim. With 24 past criminal convictions for the same types of crimes, the district court's conclusion that Defendant was a likely recidivist was eminently reasonable.

Even were the district court's consideration of the § 3553 factors questionable in the instant case, Defendant has not been able to show that his sentence rises to the level of plain error. The substance of the sentence is reasonable, given Defendant's long history of similar crimes; moreover, the sentence is well within the maximum incarceration penalties of 10 and 15 years for his two crimes of conviction. Therefore, we cannot say that the sentencing hearing in this case either affected Defendant's substantial rights or has adverse implications for the integrity of the judicial system. We therefore find that the district court did not commit plain error in sentencing Defendant.

## III.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sentence in this case.