**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0443n.06

No. 09-6342

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 30, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| JEROME RANSOM, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

Before: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Jerome Ransom was charged with two counts of bank robbery in the United States District Court for the Eastern District of Tennessee. He filed a motion for recusal of the district judge assigned to his case based on statements made by that judge about a year earlier, when Ransom appeared before the judge as a witness in the supervised-release-revocation hearing of Ransom's brother. The district judge denied this motion and, after Ransom pleaded guilty to one count and the other count was dropped, sentenced Ransom to 188 months in prison—at the high end of the 151–188-month Guidelines range. Ransom appeals both the denial of his motion for recusal and his sentence. Seeing no merit in these arguments, we **AFFIRM** his conviction and sentence.

## I. BACKGROUND

Jerome Ransom was indicted on October 15, 2008, and charged with two counts of bank robbery, in violation of 18 U.S.C. § 2113(a).  In January 2009, Ransom filed a motion for recusal of the district judge hearing his case based on the fact that Ransom had appeared before the judge about a year earlier to testify on behalf of Ransom's brother, Kelvin Ellison, and the judge had found Ransom to lack credibility.  Ellison was appearing before the judge in a supervised-release-revocation hearing due to an aggravated robbery in which Ellison and Ransom allegedly participated. Ransom testified that he had been the only one involved in an altercation with the victim of the aggravated robbery and that Ellison had not been involved at all, but the judge believed that Ransom was lying.  The judge found that Ransom's testimony lacked credibility and "that [Ransom's] testimony . . . was an effort to divert blame from [Ellison.]"  App. at 97 (Ellison Revocation Hr'g Tr.).  The judge then continued:

> Having had a chance to look Mr. Ransom in the face, and having a chance to hear his testimony, I believe that even he knew that much of his testimony was incredible. When the Court asked him about his crack history and his crack usage and being seduced to using crack cocaine on two occasions, I think I detected a slight smile and a twinkle in his eye because he knew what he was saying could not be believed by anyone.

*Id.* at 98.

In his motion for recusal, Ransom argued that this adverse credibility finding warranted recusal under 28 U.S.C. § 455(a) and (b)(1) because Ransom was also convicted in state court for this robbery, and this conviction constituted a crime that made Ransom eligible for a sentencing enhancement as a career offender under United States Sentencing Guidelines Manual ("USSG")

2

§ 4B1.1.  Ransom stated that he wished to oppose the application of that enhancement, which might force him to testify again about the facts of the aggravated robbery.

The district judge ordered the government to file a response to Ransom's motion for recusal, which it did on February 1, 2009.  About a week later, on February 9, 2009, the judge denied Ransom's motion for recusal.  Relying primarily on *Liteky v. United States*, 510 U.S. 540 (1994), the judge held that his conclusion in Ellison's supervised-release-revocation proceeding that Ransom was not credible "was based on a judicial proceeding, not facts from an extrajudicial source.  Nor does the Court's credibility determination suggest a deep-seated favoritism or antagonism that would make fair judgment impossible.  It was simply a determination, based on in-court proceedings, that Defendant had not told the truth."  R. 16 at 4 (Order).

On March 5, 2009, Ransom pleaded guilty to the first count of bank robbery in exchange for the dismissal of the second count.  The district judge found that the application of both the career-offender enhancement contained in USSG § 4B1.1 and a three-level reduction in offense level due to Ransom's acceptance of responsibility resulted in a Guidelines range of 151–188 months of imprisonment.  The district judge sentenced Ransom to 188 months in prison, to be followed by three years of supervised release.  Ransom now appeals.

## II.  ANALYSIS

Ransom argues that the district judge erred in denying his motion for recusal and that his sentence was unreasonable.  We see no merit in either of these arguments.

**A. The Motion For Recusal Was Properly Denied.**

We review for abuse of discretion a district court's denial of a motion to recuse. *Buell v. Mitchell*, 274 F.3d 337, 345 (6th Cir. 2001). Ransom's argument that the district judge should have recused himself is based on 28 U.S.C. § 455, which provides, in relevant part, as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

28 U.S.C. § 455. The leading case from the Supreme Court on recusal under § 455 is *Liteky*, in which the Supreme Court set out several important aspects of recusal under § 455:

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge[, although] they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display.

*Id.* at 555–56 (citation omitted; emphasis in original). *See also Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) (citing *Liteky*, 510 U.S. at 551, 555–56).

Cases in which recusal was warranted have involved, for example, instances in which the trial judge consistently interrupted the proceedings in a one-sided manner. *See, e.g.*, *id.* at 1187; *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 805–08 (6th Cir. 1999), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc); *United States v. Hickman*, 592 F.2d 931, 936 (6th Cir. 1979). Beyond this, however, relatively few cases developing *Liteky* can be found in this circuit and elsewhere. *See Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) ("[T]he only cases where courts have granted recusal motions based on in-trial conduct tend to involve singular and startling facts."). In *Lewis v. Robinson*, an unpublished case, the state trial court stated that it would not believe Lewis and called Lewis names, "including . . . a 'three or four time loser,' a 'dummy,' 'spoiled brat,' 'sham,' 'shill,' and a 'sociopath[,]' . . . often in response to [Lewis's] attempts to address the trial court and to what the trial court perceived as his attempts to delay the trial." 67 F. App'x 914, 923 (6th Cir. 2003) (unpublished opinion). Citing *Liteky*, we held on habeas review that "[a]lthough the statements by the trial judge in this case clearly expressed impatience, dissatisfaction, annoyance, and also anger, and were unnecessary and perhaps uncalled for, these statements did not make fair judgment impossible." *Id.* In another unpublished case, *United States v. Lossia*, this court considered a claim that recusal was required where the district judge compared the defendant's crimes to robbery and stated, "it would have been better if he were a bank robber . . . ." 193 F. App'x 432, 438 (6th Cir. 2006) (unpublished opinion). We held that recusal was not required because the "Defendant invited the analogy to robbery," when his counsel attempted to explain why the Defendant was not as bad as a bank robber. *Id.* Furthermore, these

5

comments fell under *Liteky*'s finding that "'judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Id.* (quoting *Liteky*, 510 U.S. at 555).

Relying solely on *Liteky*'s reference to comments that "display a deep-seated . . . antagonism that would make fair judgment impossible," 510 U.S. at 555, Ransom argues that several personal comments of the district judge regarding Ransom during the Ellison supervised-release-revocation hearing require recusal. Ransom complains that the judge labeled Ransom a "crack head," which term Ransom claims was used pejoratively, not descriptively, and that the judge stated that Ransom was "not doing anything at all productive." Ransom Br. at 21–22 (quoting App. at 101). Ransom also takes issue with the district judge's statements at the Ellison hearing regarding the negative behavior that crack addicts stereotypically engage in:

> Crack addicts need crack cocaine. They don't care how they get it or who they're going to get it from. They'll rob their mother to get enough money to get their next crack high. So even though he [Mr. Ransom] knew this person knew him and committing the robbery in the course of an automobile being driven is dangerous—but crack addicts do things like that all the time.

Ransom Br. at 22 (quoting App. at 102 (alteration added by Ransom)). Ransom also argues that the judge's claim at Ransom's sentencing hearing that he didn't remember Ransom from Ellison's supervised-release-revocation hearing was untrue.

The government responds by emphasizing that the factual basis for the district judge's comments was provided by Ransom himself when Ransom admitted that he frequently spent time outside a crack house with crack addicts, that he used crack cocaine himself on two occasions, and

that he had very little employment history. The government also notes that Ellison described

Ransom as a habitual user of drugs in a statement that Ellison made to his probation officer, who,

in turn, relayed the statement to the district judge—a fact that was acknowledged by the judge in the

supervised-release-revocation hearing. Ellison may have even used the term "crack head," although

the judge couldn't remember for sure. As a result, the government urges that the judge's statements

did not reflect "such a high degree of favoritism or antagonism as to make fair judgment

impossible." *Liteky*, 510 U.S. at 555. This is especially so, the government argues, because the

district judge also expressed "sincere concern for [Ransom's] well-being and future" in the

sentencing hearing. Gov't Br. at 14. In the sentencing hearing, the judge stated:

> The Court was impressed with the statement that Mr. Ransom made. The Court
> agrees with [defense counsel] that he is a person of considerable intellect. And I put
> this long criminal history in his background down to him being a substance abuser,
> that is, an abuser of illegal substances. The Court will recommend that while he's
> in prison he receive treatment for his drug problem.

R. 38 at 14 (Sent. Tr.). Thus, the government argues, it was not an abuse of discretion for the district

judge to deny Ransom's motion for recusal.

We agree with the government. Although we do not condone the use of the term "crack

head," we do not believe that the district judge abused his discretion in denying the recusal motion.

First, as *Liteky* explains, "expressions of impatience, dissatisfaction, [and] annoyance . . . that

are within the bounds of what imperfect men and women . . . sometimes display" do not establish

bias or partiality. *Liteky*, 510 U.S. at 555–56. The statements here fall within the purview of this

language, especially when they are viewed in the larger context of the Ellison hearing, which shows

both that the judge gave a thorough, well-reasoned, and fairminded explanation for his adverse credibility finding and that Ransom and Ellison provided the judge with the factual predicate for his statements. Ransom admitted that he had used crack cocaine at least twice before, and that he frequently spent time at a house with other individuals who "[h]ave been known to use crack[.]" App. at 78, 82–85. Ransom also described his sparse employment history and his first experience using crack cocaine. App. 79–86. Finally, perhaps in response to Ellison's statement that Ransom was a habitual user of drugs, the judge asked Ransom whether he was known as a "crack head," to which Ransom first responded, "No one can actually—No one can come up here and say that they have seen me use." App. at 86. After being pressed by the judge to give a less-evasive answer, however, Ransom simply affirmed that he was not known in the community "as a crack head." *Id.*

After the closing argument in Ellison's case (but before making the statements that Ransom complains of), the district judge gave a reasoned explanation for his conclusion that Ransom lacked credibility. Ransom had testified that the victim of the aggravated robbery was himself a crack user who was at the same crack house as Ransom, and that Ransom had assaulted the victim at that house. The district judge did not believe Ransom's claim that the victim, who had spent twenty-seven years in the military, was a user of crack cocaine. The district judge, who noted that he had spent many years in the military himself, found unbelievable that the victim either used crack while he was in the military and avoided detection in frequent drug tests or turned to crack "late in life," which the judge said was "extremely rare." App. at 96–97. As a result, the judge found that it was not credible

8

that the victim was a crack user, and determined that "Mr. Ransom's testimony is incredible and is not to be believed." *Id.* at 97.

It was only subsequently that the judge made the "twinkle in his eye" statement. Furthermore, it was even later in the hearing—while he was handing down Ellison's sentence—that the judge made the statements about how Ransom was "probably a crack head" and that crack addicts would "rob their mother." *Id.* at 102, 103. Viewing the court's statements as a whole, we conclude that the district judge made a clear and well-reasoned finding in Ellison's supervised-release-revocation hearing that Ransom lacked credibility, and that the factual predicate for the judge's statements about crack addicts was provided by both Ransom's incriminating admissions and Ransom's lack of credibility on other matters by, for example, accusing the victim of the aggravated robbery of being a crack user. *See Lossia*, 193 F. App'x at 438 (noting that the defendant introduced the subject matter of the district court's comments, if not the nature or style of the comments, into the proceedings). Insofar as the district judge expressed displeasure with Ransom, we believe that this displeasure was within the parameters set by *Liteky*. *Liteky*, 510 U.S. at 556.

In sum, it was not an abuse of discretion for the district judge to deny Ransom's motion for recusal. The district judge's comments at Ellison's supervised-release-revocation hearing one year before Ransom's case did not "display a deep-seated . . . antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. We therefore affirm the district court's denial of Ransom's motion for recusal.

**B. Ransom's Sentence Is Substantively Reasonable.**

Ransom next argues that the 188-month sentence he received is unreasonable. He contends that a sentence within the range that would have applied without the career-offender enhancement "would have been 'sufficient, but not greater than necessary' to achieve the goals of § 3553(a)." Ransom Br. at 26 (quoting 18 U.S.C. § 3553(a)). There is no merit in this argument.

We review for abuse of discretion claims of substantive unreasonableness. *United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008). The district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2).]" 18 U.S.C. § 3553(a). "A sentence may be substantively unreasonable where the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) (alterations in original; internal quotation marks omitted). When a sentence is within the Guidelines range, we may apply a presumption of reasonableness. *Id.* A "mere allegation that the sentence imposed is greater than necessary to achieve the goals of punishment outlined in § 3553(a) is insufficient to rebut the presumption of reasonableness." *United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006).

Here, Ransom's 188-month sentence is within the Guidelines range of 151–188 months, and therefore is presumed reasonable under this circuit's precedent. As support for his argument that a sentence within the range that would have applied without the career-offender enhancement "would have been" sufficient, Ransom claims that a lower sentence would have given him "the opportunity

to attempt to work 'above the table' for a number of years before he qualified for Social Security benefits." Ransom Br. at 27. Furthermore, "While his daughter Jasmine would be grown, Mr. Ransom could be a more actively-involved grandfather to any children she may have." *Id.* Ransom does not argue, however, that the sentence was selected arbitrarily or based on impermissible factors, or that the district court either failed to consider any particular § 3553(a) factor or gave impermissible weight to any one factor. *Martinez*, 588 F.3d at 328. Ransom's arguments do not suffice to show his sentence to be substantively unreasonable. We therefore hold that his sentence was substantively reasonable.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** both the district court's denial of Ransom's motion for recusal and the sentence imposed.